Thank you, Your Honor. I may have pleased the court. My name is Chase Hanson, and I represent the appellant, Philip Holt. With the court's permission, I'd like to reserve three minutes for rebuttal. That will be granted. Your Honor, this court should grant Holden's habeas petition for three reasons. First, Holden's trial counsel, Mr. Kinsale, failed to conduct any investigation of Regis Scott, the one person that physical evidence ties to this murder. The record reveals no steps taken by Kinsale to investigate Scott, constituting objectively deficient performance under strict Second, because he failed to investigate Scott, Kinsale was uninformed at trial, and his decisions cannot be chalked up as trial strategies. Kinsale's failure to introduce what evidence he did have of Scott's potential involvement is not entitled to deference under Strickland and is deficient. Third, had Kinsale conducted a reasonable investigation and introduced what evidence he had to support the defensive theory, there is at least a reasonable probability that the trial results would have been different. Counsel, assuming we can reach your Strickland claim, we'll come back to that in a second. I just want to understand the basis for your claim that counsel in the trial did not perform any reasonable investigation. Yes, Your Honor. So, I think we have two arguments to that. First, there's nothing in the record showing that Kinsale conducted any investigation of Scott whatsoever. But isn't that, it's your burden here, right? I mean, so, we don't know either way what kind of an investigation was conducted, but your burden is so, I mean, maybe proving a negative is difficult, but in this case, we actually have a stipulation that counsel exacted from the government, and so something must have been done, right? Yes, Your Honor. We're not trying to escape our burden here. The stipulation wasn't due to the counsel's investigation. That information was disclosed to him in pretrial disclosures from the state. So, that doesn't evidence that Kinsale conducted any independent investigation. So, in addition to the record showing that there was no investigation, we think that the fact that so little was made of the information that Kinsale was given in trial and his failure Why is that a strategic decision? I understand you may in hindsight quibble with that choice, but how does that evidence in any way that there was no investigation into the way that counsel wanted to present the case? Because, Your Honor, I think it's because the argument that Kinsale advanced at trial was a third-party guilt offense, and this evidence is exactly the evidence that he would have introduced had he conducted a reasonable investigation. I mean, perhaps. I just, again, I'm back to the Chief's question. Isn't that speculative? I mean, perhaps there was investigation, or perhaps that investigation yielded information that proved that counsel's against going down this road further. I just, I don't know how we know that from the record, and given that this is your burden, I'm not sure how we're supposed to evaluate that. Well, Your Honor, the fact that Kinsale made the stipulation itself means that he was prepared to introduce evidence related to Scott. He entered into a stipulation that Scott was arrested with a murder weapon. So, this is exactly the evidence that if he had conducted an investigation, he would have introduced. But, because he failed to do so, it suggests that counsel did not conduct that investigation and contended himself with that stipulation, which itself is bare bones, and therefore, counsel, we think that this shows that counsel didn't conduct an investigation. But there's nothing in the record from counsel, right? No, Your Honor. There's no fact-finding below in the PCR court or in the district court. So, there's nothing in the record from Kinsale himself. So, we have to work on the bare trial record. What is the effect if we were to vacate, remand the motion for reconsideration? Won't we just have the same appeal all over again? Your Honor, I think what you're speaking to, Holden's motion for reconsideration, if you were to vacate and remand, the court could consider in the first instance the evidence that Holden advanced in that motion, particularly the sweatshirt that Scott was arrested in and that the gunman in the murder that Holden was ultimately convicted of was testified to a warrant. So, the court, in the first instance, the district court, could consider that evidence in Holden's motion for reconsideration of the merits. Well, as Judge Plante's brought this up, I'm thinking, is there, your client, I guess, labeled this as a Rule 60 motion. You say it's a Rule 59 motion. Does it matter what the label is, or do we look to the substance of the motion itself? I think this court's practice when petitioners are proceeding pro se is to look to the substance of the motion. So, while Holden did label at the top his motion a Rule 60 motion, he also called it a motion for reconsideration, which we think is relevant here. And also, I think the timing of the motion is very important. His motion was made 16 days after the district court's initial denial of his habeas claim, well within the 28 days during which he was entitled to move for relief under Rule 59E. And so, that brings up our opinion in Santorelli, I guess, right, on how this ought to be handled. Well, you're right. Respectfully, I think we're advancing two lines of argument here on the motion for reconsideration. One, we think that it's properly considered a Rule 59E motion, and as such, the Supreme Court's decision in Bannister would control this position and therefore would not be a second or successive habeas petition. Alternatively, because Holden's motion was, in essence, a motion for reconsideration, we think that this court's decision in Santorelli also would make it such that his motion was not a second or successive habeas petition because it was filed during the time when he was entitled to file a notice of appeal to seek appellate review of that decision. So, as he had not exhausted his one full and definitive habeas petition in the District Court or in the Court of Appeals, we think that this court's decision in Santorelli provides ample basis for deeming this motion not a second or successive habeas petition. If we agree with that, then I suppose, does it make any difference whether we view this as a 59 or a 60 motion? We would simply say, either way, it was within the cycle that Santorelli outlined, and therefore, it couldn't have been denied a second or successive, and so we wouldn't go any further than that if the merits restricted our commitment. This court could do that, Your Honor. So, insofar as this court wants to address that issue first in remand, we certainly welcome that. But we do think that because the evidence introduced in his motion for reconsideration is the orange sweatshirt and the initial habeas claim was fully adjudicated on the merits, this court is entitled to and is entirely able to reach the merits of that Strickland claim as it's cleanly presented. Well, now, as Judge Fuentes astutely pointed out, I mean, is this basically a wheel-spinning exercise if we send it back? Is this just going to bounce right back up to us? I don't want to presume what the District Court might do in considering the motion for reconsideration on the merits. It's possible if the District Court denied, you'd be hearing the same appeal in some time. That's why we think that the initial denial, which there's no argument that there's a vehicle problem with that petition, this court can reach the merits of that Strickland claim. I see that Holden is no longer pursuing the Brady claim that he raised in the motion for reconsideration. That's correct, Your Honor. How should that affect our analysis? Respectfully, I don't think it affects the jurisdictional analysis. And just to give some background on why that is, when Holden made his motion for reconsideration, he simply didn't have the disclosures available to him that the state made. And the reports that were given by the state to Kinsale, Holden simply didn't know that those disclosures were made. So he was proceeding in good faith when he alleged a Brady claim, but after consulting with my friend on the other side, we realized that the state met its obligations with Brady, and therefore, we're not pursuing that claim. But to Your Honor's point, we don't think that affects the jurisdictional analysis, whether or not we think the district court erred either way, that it had jurisdiction to consider his motion for reconsideration, which includes the new evidence in addition to the Brady claim. So this court can remand on that basis. All right. Do you have anything else, counsel? Yes, Your Honor. Okay, sure. Go ahead. We've been talking about... Light's still green. I'd like to return to the merits if we could just for a second. So we've talked about that investigation, but we're advancing also a failure to introduce evidence claim. We think that this court's decision in branch is... This court should follow that decision where counsel was put on notice of the existence of potential witnesses. Counsel, on the record, did not show that counsel conducted any investigation into those witnesses after being put on notice. And therefore, this court found that that investigation was faulty and the failure to introduce evidence at trial was itself a deficient performance under Strickland. Is there anything in the record that indicates an absence of investigation by Kintel? Well, Your Honor, as I was saying to Judge Brady before, the fact that there's nothing in the record saying or showing that he took any steps and the implication because that Scott evidence is so strong in support of the defense that Kintel ultimately presented that trial, his failure to introduce that evidence at trial, it simply cannot be a reasonable decision of trial strategy. And we think that also, in addition to the failure, which we think itself is sufficient to satisfy the first law of Strickland, because Kintel did not conduct a reasonable investigation, that later decision at trial is uninformed. And for that reason, we don't think that the decision not to present evidence is entitled to deference under Strickland, the strategic deference under Strickland. Can the district court hold a hearing if we remand? An evidentiary hearing? Yes. If this court holds that we have satisfied the burden under 2254D? Yes. Okay. And on that basis, we think that this court should reach the merits of the Strickland claim and that we have met our burden under 2254D. And we welcome a remand to the district court to hold those evidentiary hearings where the court would review de novo holding claim. Your Honor, additionally, I'd like to talk about the second prong of Strickland in the time that I have left, which is the prejudice prong. Holden was prejudiced by Kintel's failure to investigate and failure to present evidence. This is true because the state's case was not a particularly strong one. It certainly was not a model of clarity. So the state's two witnesses, two star witnesses, Peggy, who was the target of the shooting, and then Palmer, who was an eyewitness, both equivocated on the record about their testimony. And their testimony was rebutted by the evidence, the video evidence that we've entered into the record. Can we just go back to this? I just want to clarify this. How could the district court hold an evidentiary hearing under 2254D? I mean, haven't we said that, under ECA, you're limited to the state court record? Yes, Your Honor. At this stage, we are limited. Under Pinholster in this court's case, it's interpreting that standard. But as this court has done before, and I know of no authority to the contrary, that once the petitioner has met his burden under 2254D, this court engages in de novo review, at which point the court is not bound by 2254E, and the district court may hold an evidentiary hearing. So as long as we surmount our burden under 2254E, the federal court can engage in fact-finding. Is there a motion for reconsideration in this case? I'm sorry? A motion for reconsideration? To ultimately make a decision? No? I'm sorry, I'm not sure. Well, we're... You're primary... If I'm not mistaken, your primary push is to consider the Rule 60B motion as a motion for reconsideration under 59E. Is that correct? That and this court's decision in Santorelli. Okay. Okay. Thank you. Thank you. We'll hear from the state... Good morning, Your Honors. Good morning. My name is Lucille M. Rossano, Special Deputy Attorney General, acting Essex County Assistant Prosecutor for the Appellees, the New Jersey Attorney General, and the Warden of the Essex County Correctional Facility. Holden's trial counsel, Sterling Cansell, presented a reasonably competent third-party defense through the stipulation. It can be inferred from the record that was available that Cansell did know about the arrest reports and the ninth-in reports that listed Mr. Holden's height and weight when he was arrested, and Mr. Cansell reasonably chose not to present that information. Rather, he presented the general stipulation that Scott was found with a gun eight months later. Mr. Cansell was a very experienced trial attorney. Scott's height and weight described numerous men. It didn't describe Holden, who was a shorter man and weighed about 30 to 50 pounds more than Scott. The state could have countered with evidence of the differences in their ages also and the conflicting weight descriptions. Scott, the record shows, was much younger than Holden. Holden was nearly 40 years old when this crime was committed, and Mr. Scott was only 24. Well, if I could just stop you for a minute. I mean, this case is just a little bit confounding. We have obviously some trial strategy here, and then everyone is just inferring what had happened with trial counsel. There's nothing in the record about trial counsel's thoughts about strategy here, right? All we have is this transcript. No, there isn't, Your Honor, but it can be inferred from the record that he had. He presented a stipulation based upon what the Niven report showed about— What about the orange sweatshirt, which seems to be a big deal for your adversary? Your Honor, the record would show that Mr. Cansell did have the information about the orange sweatshirt at the time. And in addition, he chose not to present that information. Either it was a garden-variety orange sweatshirt, it was worn by Mr. Scott or someone else— Yeah, but it also was worn by the guy holding the murder weapon. Yes, Your Honor, but it was eight months later, and Mr. Cansell understood that he would have tried to present evidence that it was a run-of-the-mill orange sweatshirt that someone was wearing eight months later. The jury would not have found this credible. In addition, Your Honor, the arrest photo of Mr. Scott shows a younger man, a completely different person. Mr. Scott has hair on his head. He has no facial marks. He has very little facial hair. Mr. Holden, which Mr. Cansell presented during his summation, showed that Holden had been misidentified by A.G. and Palmer because he was bald, he had a significant beard, he had a frustration mark on his forehead, and the witnesses didn't mention this. Also, Cansell did realize that Scott would not have appeared as a witness for the defense to implicate himself or put himself at the crime scene, and if Scott didn't testify, his criminal record obviously couldn't come in as evidence, but even if he had agreed to testify, we have the phone interview with Holden's investigators that the district court said was not part of the record but did consider in rendering his opinion. That showed that Scott said that he wasn't at the scene, he never frequented that area, and that he stole the gun from a car in the Georgia King Village where he was arrested. Mr. Cansell also presented a stipulation at the very end of the defense case, so the last thing the jury did hear was that the murder weapon was recovered from someone else, and this was powerful evidence that cast doubt on the state's case. It seems like that has to be where you rely, right? That's what distinguishes cases like Kaufman and Vaughn, because the stipulation, to your argument, shows there must have been some sort of reasonable investigation, it's not as if there was information and nothing happened, the stipulation arose, and so from that, you could say that Holden hasn't met his burden. I'm still perplexed, though, about whether or not we can even get to this issue, and I'm curious, what is your position about Santorelli and the fact that this occurred during the pendency of a potential abuse? Your Honor, my understanding of the issue is that our position in our brief was that the district court correctly found that Holden's 60B motion was, in fact, in substance of a second petition. Right, but how could it do that given that the time to appeal hadn't run? Well, Your Honor, in this case, if it was a second motion, my understanding is that there was no appeal of the initial petition pending when Mr. Holden filed that second petition. No, that's right. So is the argument, the state's argument, that, well, the Holdings and Gonzalez and Bannister and Glystone and Santorelli and Faulk all add up to say that you have to have an active appeal pending, not a potential appeal? You have to have an active appeal pending, and Santorelli also states that the opportunity, wonderful opportunity for relief, expires when the time to appeal passes, and in this case, the district court rendered its opinion on December 1st of 2020, and Mr. Holden had 30 days to file a notice of appeal from that order, and that he filed an untimely notice of appeal on April 29th, more than 30 days later. So for that reason, the appellees would have argued that the state does not have jurisdiction. Nevertheless, Your Honors, the court can assume jurisdiction and reach the merits of the case here, and the merits of the case show that Mr. Holden's trial counsel was not ineffective. If I can go back to . . . You say the trial counsel was not ineffective? Excuse me. Was, yes. That, yes, Your Honor, that if this court reaches the merits, it should find that Mr. In addition, I would just note also that Mr. Consail used the stipulation in summation to argue that . . . to show that Mr. Holden not only had no connection to the case, but he was in fact incarcerated at the time that these two subsequent shootings occurred. Mr. Consail believed this was the best strategy based on the information he had. It was a reasonable investigation, and based on his understanding that he wasn't going to get Mr. Scott to testify, and that the general descriptions of height, weight, and an orange sweatshirt would not have played well with the jury. There were two witnesses that observed the shooting, were there not? Yes, there were, Your Honor. And they testified that they saw what occurred? Yes, Your Honor. And that goes to . . . That they saw that there was a shooting and somebody was killed? Yes, Your Honor. And that goes to the . . . And that person is identified as Holden? Yes. Yes, Your Honor. And that goes to the prejudice problem of Strickland here. The strength of the state's case has to be considered in evaluating the prejudice. The two eyewitnesses, all the court said, presented damning evidence against Holden. AG had a fight, a hand-to-hand fight with Mr. Holden prior to the shooting. He described the orange sweatshirt. He saw Mr. Holden shoot at him as he was bending down, and a couple of days later,  he identified him in the video and he identified him in court. Palmer was previously acquainted with Holden. He knew his nickname. Palmer also corroborated AG's testimony about the fight that preceded the shooting. Palmer recognized that Holden was speaking with . . . Excuse me, I'm sorry. Palmer recognized Holden and saw him speaking with someone at the corner just prior to the shooting. He described the orange sweatshirt, a vest, and an orange bandana around his neck. And Palmer also saw Holden go past him and shoot at AG. Palmer also identified Holden's photograph from the array in the video and in court. On Haley's review, the state court's decision is entitled to deference, and its factual findings are presumed correct. For all of these reasons, please ask that the district court's decision be affirmed. Was the weapon that was used retrieved from the scene, or was it discovered sometime later? No, Your Honor. The weapon was not retrieved from the scene. Holden ran away, and it was discovered to have a ballistics match, and that's the Niven report that was part of the record. That same weapon that was used to murder Mrs. Cunningham in this case was used in a shooting seven months later in August of 2010, and then a second time eight months later in September of 2010, and that's the day when Mr. Scott was arrested in possession of that weapon. Thank you, counsel. Thank you. We'll hear rebuttal. Yes, Your Honor. I'd like to briefly say four quick points. First, on the motion for reconsideration and the timing of the notice of appeal, my friend said that Holden filed his first notice of appeal on April 2nd, which is true, but his post-denial motion for reconsideration told the time to file notice of appeal until disposition of that motion under Federal Rule of Appellate Procedure 4A4A, and therefore, because he didn't receive notice of the district court's disposition of that, he was entitled to relief under Federal Rule of Appellate Procedure 4A6, and my friend does not dispute that he was entitled to relief under that rule. And so all of that then brings the motion, and therefore the petition, within the ambit of Santorelli, because that's what I'm trying to figure out, is that obviously the district court denies the motion on January 8th. The original petition was denied on 12-1, so from that standpoint, it's been obviously more than 30 days. But your argument is filing the motion for reconsideration told the timing for the notice of appeal, which was then recognized when we granted leave to appeal, and so the 1-8 order was outside the one full – was entered within the time of the one full cycle period under Santorelli, and therefore was premature. I think that's right. I think we're advancing sort of parallel arguments in that direction. The point I just made about the timing of the notice of appeal goes to this court's appellate jurisdiction, but we think that the timing of the motion for reconsideration goes to the district court's jurisdiction of that motion as not a second or successive habeas petition, and we think that the timing of the notice of appeal, in this case, encompasses both of those orders into this court's appellate jurisdiction. Yeah, that's new, right? I mean, the whole Santorelli rule is debated among the circuit courts, right? There's no clear guidance on what happens when you file one of these motions during the time of an appeal running or when you could file, but you're arguing for something, I think, more novel, right, that we have to then sort of amplify Santorelli in order to find that this was entered prematurely, assuming, again, I know you – merits and all that, but let's assume on this point, wouldn't we have to – we would need a different holding than we have in Santorelli or Blystone, right? I don't actually think so, Your Honor, but if the court is just inclined to agree with that, I think it is a very marginal different holding. So Santorelli itself expressly declined to say that the petitioner has one full and fair opportunity to receive habeas relief in the district court. It said that that would be an unnecessary and untaxable modifier added to the statute, and therefore I think this falls within Santorelli. But even if this court disagrees, the reasoning from Santorelli supports our position that during the time to file a notice of appeal, the petitioner has not received that one full and fair opportunity, and therefore we think that this court – that the district court has jurisdiction and this court has jurisdiction over that order. Now, your time's almost up, but you had three points. Do you want to quickly give us the others? Yes, very briefly, Your Honor. So my friend referenced the phone transcript that the district court considered. We think that this court cannot consider that evidence under pinholster, but if it does consider it, it supports our position that there was no investigation because Scott admitted that no one had asked him about the murder, much less Kinsale, and that was the first time that he talked about it. Second, my friend says that Holden and Scott look remarkably different. We agree, but the important thing is that Scott resembles better the descriptions of the gunman offered by the state's witnesses. He testified that the gunman was about his height, which was about 5'10". Scott was about 5'8 or 5'9". Holden was 5'6". So that inference supports the conclusion that there was ineffective assistance to counsel for failing to present that information. And finally, Your Honor, the state's case was not a slam dunk. Again, it wasn't a model of clarity. The jury deliberated over three days and reheard testimony from the state's two key witnesses  So, Your Honor, we think that the jury was uncertain about this and, therefore, it weighs in favor of us satisfying the strict ones like this problem. Okay. Is that it, counsel? Yes, Your Honor. If there's no further questions, we ask the court to reverse. Thank you. Thank you, counsel. We will take this case under advisement and thank counsel for their excellent briefing and oral argument today. And a special thank you to Mr. Hanson and the Deckard firm for taking this case on pro bono. We're grateful for that and it serves our system, so thank you.